```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
_____

UNITED STATES OF AMERICA,         )
                                  )
     Plaintiff,                   )
                                  )
v.                                )      Cr. No. 05-20202-Ml
                                  )
ROSCOE DIXON,                     )
                                  )
     Defendant.                   )
                                  )
_____

   ORDER DENYING MOTION TO REMOVE SURPLUS LANGUAGE FROM INDICTMENT
_____
```

Before the Court is Defendant's Motion to Remove Surplus Language from Indictment, filed May 11, 2006. The Government responded in opposition on May 16, 2006. For the reasons set forth below, Defendant's motion is DENIED.

Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Upon motion of the defendant, "the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). Whether to strike surplus language from an indictment is a matter within the sound discretion of the district court. United States v. Kemper, 503 F.2d 327, 329 (6th Cir. 1974). Rule 7(d) "is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." Id.

The Sixth Circuit has held that "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993); United States v. Thomas, 875 F.2d 559, 562 n.2 (1989).

Defendant argues that the sections of the Indictment entitled "Introduction" and "Object and Manner and Means of the Conspiracy" contain surplus language and should be removed.  The "Introduction" section consists of six paragraphs.  Paragraphs one through four describe the legislative process in Tennessee.  They state, in pertinent part, that the legislative power of the State of Tennessee is vested in the General Assembly, or Legislature; members of the Legislature take an oath of office to perform their official duties without favor or prejudice; the General Assembly has the power to appropriate monies and collect taxes; and legislative proposals must be passed by a majority in the House and Senate and are then sent to the Governor. (Indictment ¶¶ 1-4.)  Paragraph five states that Defendant was a member of the state senate and resigned in January 2005.  (Id. ¶ 5.)  Paragraph six states:

> 6. E-Cycle Management, Incorporated (hereinafter referred to as E-Cycle) was an undercover business operated by the Federal Bureau of Investigation to respond to allegations of corruption by elected officials.  E-Cycle purportedly was in the business of obtaining and

>      disposing of outdated electronic equipment,
>      sending it to a place outside the United States
>      and salvaging it.  E-Cycle's headquarters was
>      represented to be in Atlanta, Georgia.

(Id. ¶ 6.)  The section entitled "Object and Manner and Means of the Conspiracy" under Count 1 states:

>      It was the object of the conspiracy that
> ROSCOE DIXON and BARRY MYERS would obtain money,
> that is $9,500 in bribes.  The bribes were induced
> under color of ROSCOE DIXON's official right as a
> Tennessee Legislator.  These payments were not
> legally due to the defendants.  These payments were
> in exchange for influencing ROSCOE DIXON's
> performance of his duties as a Tennessee State
> Legislator.
>      It was part of the conspiracy that the
> defendant BARRY MYERS, would represent to certain
> individuals, including an individual associated
> with E-Cycle, that he had influence over, collected
> money for, and was in essence a "bag man" for
> certain members of the Tennessee General Assembly
> who could be influenced in sponsoring and voting
> for certain legislation that would benefit E-Cycle.
>      It was further part of the conspiracy, that
> BARRY MYERS introduced certain individuals
> representing E-Cycle to defendant ROSCOE DIXON, and
> that ROSCOE DIXON would support, propose, and
> withdraw certain legislation at the request of
> persons from E-Cycle in exchange for illegal
> payments of sums of money.

(Id. pp. 3-4.)

Defendant describes these sections as "inappropriate oral argument," "immaterial," and "highly prejudicial" and further contends that they will "only serve to inflame the jury." (Def.'s Mot. 4.)  Defendant relies for support on Rule 7(c), which states that the indictment "need not contain a formal introduction or conclusion," but cites to no other authority.  In

response, the Government argues that none of the introductory language is prejudicial and that it intends to prove these allegations at trial. The Government further contends that Sixth Circuit law requires the manner, means, and overt acts of a conspiracy to be set out in the indictment.

The Court, having reviewed the Indictment, the applicable legal standard, and the parties' arguments, finds that none of the language to which Defendant objects constitutes prejudicial surplusage. The introductory paragraphs merely describe, in a general and neutral fashion, the legislative process in Tennessee and the nature of the undercover FBI operation that eventually resulted in the Government's charges in this case. This language is not prejudicial; moreover, even if it were prejudicial, as noted above, the Sixth Circuit has held that if the language in the indictment constitutes relevant information that the Government plans to prove at trial, "it cannot be considered surplusage." Moss, 9 F.3d at 550.

Similarly, the Indictment's description of the object, manner, and means of the conspiracy is not prejudicial, and the Government plans to prove these allegations at trial. Moreover, an indictment "must indicate the manner in which the alleged violation occurred and the essential factual allegations in support thereof." United States v. Levinson, 405 F.2d 971, 977 (6th Cir. 1968). A "valid indictment" must "inform the accused

of the nature of the charges against him, with such specificity and particularity that the accused is enabled to undertake and prepare an adequate defense." Id. (also stating that valid indictment "must be so framed that it should be evident to what extent a plea of double jeopardy is available"); see also Fed. R. Crim. P. 7(c)(1)("A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.")  The Court finds that the section entitled "Object and Manner and Means of the Conspiracy" properly sets forth the manner in which the alleged conspiracy was carried out and essential factual allegations in support.  This language is not surplusage.

Defendant's motion to remove surplus language from the indictment is DENIED.

SO ORDERED this 18th day of May, 2006.

/s/ Jon P. McCalla
JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE